UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL MURR,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>    Defendant. | NO.  1:14-cv-03144-SAB<br><br>**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Plaintiff's Motion for Summary Judgment, ECF No. 13, and Defendant's Motion for Summary Judgment, ECF No. 19. The motions were heard without oral argument. Plaintiff is represented by D. James Tree. Defendant is represented by Assistant United States Attorney Pamela De Rusha and Special Assistant United States Attorney Daphne Banay.

**I.    Jurisdiction**

On June 23, 2010, Plaintiff filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income (SSI). In both applications, Plaintiff alleged he is disabled beginning June 22, 2010, due to learning disabilities, intellectual disability, and depression.

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

His application was denied initially on December 3, 2010, and again denied on reconsideration on February 8, 2011. A timely request for a hearing was made.

On October 9, 2012, a video hearing was scheduled. Plaintiff's counsel was present in Yakima, but because the prior hearing had run over by one-and-a-half hours, Plaintiff left when his ride showed up, thinking if he missed his ride, he would have to walk home and lose his ride privileges. The ALJ, after hearing what had happened, continued with the testimony of the vocational expert Trevor Duncan, M.Ed, MBA, CDMS. Afterward, she sent Plaintiff a "show cause" letter. Plaintiff filed a response, and the ALJ found good cause existed for Plaintiff's failure to appear. A video hearing was rescheduled for May 14, 2013. On that day, Plaintiff appeared at the video hearing in Yakima, Washington before Administrative Law Judge (ALJ) Laura Valente who presided over the hearing from Seattle. Kimberly Mullinax, vocational expert, also appeared at the hearing. Plaintiff was represented by attorney D. James Tree.

The ALJ issued a decision on July 12, 2013, finding that Plaintiff was not disabled. Plaintiff timely requested review by the Appeals Council, which denied his request for review on August 22, 2014. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner. 42 U.S.C. §405(h).

Plaintiff filed a timely appeal with the U.S. District Court for the Eastern District of Washington on October 7, 2014. The instant matter is before this Court pursuant to 42 U.S.C. § 405(g).

**II.    Sequential Evaluation Process**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant shall be determined to be under a disability

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. § 416.920(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. § 416.972(a); *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 416.971. If he is not, the ALJ proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. § 416.909. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity?  20 C.F.R. § 416.920(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.*  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Before considering Step 4, the ALJ must first determine the claimant's residual functional capacity. 20 C.F.R. § 416.920(e). An individual's residual

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.

Step 4: Does the impairment prevent the claimant from performing work he has performed in the past? 20 C.F.R. § 416.920(f). If the claimant is able to perform his previous work, he is not disabled. *Id.* If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy in view of his age, education, and work experience? 20 C.F.R. § 416.920(g).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents his from engaging in her previous occupation. *Id.* At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

## III. Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## IV. Statement of Facts

The facts have been presented in the administrative transcript and the ALJ's decision and will only be summarized here.

At the time of the hearing, Plaintiff was 20 years old. Although Plaintiff graduated from high school, he was in special educations classes throughout the entirety of his school years. He received a Special Education twelfth grade equivalency. Plaintiff has past part-time work experience. He worked as a park aide for four months, picking up garbage and helping clean parks; worked for Little Ceasar's Pizza for a year; and worked for a year at the Yakima Transit Center selling bus passes. This position was characterized as on-the-job training in the record.

Plaintiff lives with his parents. He mows the lawn and cleans his room. He is able to cook simple meals, but needs assistance to shop for groceries. He does not have a driver's license. He has failed the written driving test three times. He usually uses Dial-A-Ride to attend appointments. His latest IQ testing reveals a Full Scale IQ of 71. He has difficulty with abstract thought processes to make good decisions and judgments. He spends most of his days at the Sunrise Club, which is a day treatment program supported by Central Washington Comprehensive Mental Health. There, he assists at the front desk and also assists in the thrift store.

In 2007, when Plaintiff was 17, he sexually molested a friend of his younger brother by kissing him and putting his hands down his pants. The boy reported the

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

molestation in 2008. Plaintiff was interviewed by police officers and he admitted to touching the victim. In 2009, he was charged with First Degree Child Molestation and was sentenced to 30 days in jail. At the time of the hearing, he was actively participating in sexual offender counseling with Mark Cross, PhD. Dr. Cross is a Certified Sex Offender Treatment Provider.

## V.     The ALJ's findings

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 22, 2010, the application date. (Tr. 21.)

At step two, the ALJ found Plaintiff has the following severe impairments: learning disorder, borderline intellectual functioning and depressive disorder. (Tr. 21.)

At step three, the ALJ found that Plaintiff's impairments or combinations of impairments do not meet or medically equal Listing 12.05 (Intellectual Disability). (Tr. 22.)

The ALJ concluded that Plaintiff has the residual functional capacity to perform a full range of work with the following limitations: He can climb ramps and stairs without limitations; frequently climb ladders, ropes, and scaffolds, balance, stoop and crawl; crouch and kneel without limitations. He has frequent near and far acuity with lenses and should avoid concentrated exposure to hazards such as dangerous moving machinery and heights.

The ALJ found that Plaintiff has sufficient concentration to understand, remember and carry out simple, repetitive tasks; can maintain concentration and attention in 2-hour increments for simple, repetitive type work throughout an 8-hour workday with usual and customary breaks; can work in proximity to an unlimited number of coworkers, but he should not work in coordination with them; can get along with coworkers without distracting them; can work superficially and occasionally with the general public; can have occasional interaction with supervisors; can respond to simple changes in the workplace, as

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

may be required and as are consistent for a simple repetitive type work environment. The ALJ concluded that with the above restrictions, Plaintiff can complete a normal workday without interruption. (Tr. 24.)

At step four, the ALJ found Plaintiff was not capable of performing any past relevant work as an information clerk, pizza baker, cashier, and park aide. (Tr. 32.)

At step five, the ALJ found there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 32.) Because Plaintiff's ability to perform work at all exertional levels was compromised by his nonexertional limitations, the ALJ consulted with the vocational expert, who determined that Plaintiff can perform the requirements of representative occupations such as assembler, and cleaner, housekeeping.[1] (Tr. 34.) As a result, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since June 23, 2010.

## VI. Issues for Review

1. Did the ALJ commit harmful, reversible error in discounting Dr. Mark Cross's extensive treatment notes and specifically in rejecting his Mental Source Statement in formulating her RFC findings?

2. Did the ALJ commit harmful, reversible error by failing to weigh the opinions of Ms. Boyer and Ms. Spitler, and improperly selecting limited information from their reports to support her conclusions?

3. When the improperly discredited evidence is credited-as-true does it become clear that the proper remedy is remand for an immediate award of benefits?

4. Did the ALJ commit harmful, reversible error in discounting Plaintiff's credibility on the basis of an erroneous interpretation of his activities of daily living?

---

[1] At the prior hearing, the vocational expert identified other representative occupations Plaintiff could perform such as auto cleaner, production assembler, and mail clerk. (Tr. 34.)

## VII. Discussion

After reviewing the record and specifically the transcript of the hearing, it becomes clear that Plaintiff is unable to perform gainful employment in the national economy. As Plaintiff's attorney demonstrated at the hearing, Plaintiff's defense mechanism when he is unsure of the question is to generally agree with statements posed by the ALJ. Rather than recognize this, the ALJ just continued the questions as if Plaintiff had answered accurately. She then relied on his answers to her statements to support her decision that Plaintiff is not disabled. The record adequately demonstrates that Plaintiff thinks slowly and when he is unable to process information quickly enough, he simply agrees with the questioner. This is adequately explained in the record, and specifically by Dr. Ronald Roesch, a forensic psychologist who evaluated Plaintiff's understanding of his *Miranda* rights when he was arrested as well as his risk of reoffending in the future. Additionally, in their police reports written in 2008, the Union Gap police officers noted that Plaintiff suffers from some sort of mental disability and is slow at processing information. It was readily apparent to these officers that Plaintiff was not a normal functioning adult. Yet, in spite of all this evidence, the ALJ concluded that Plaintiff "is a highly functioning individual who has made a few bad mistakes in his life." This conclusion is not supported by substantial evidence.

The ALJ gave little weight to Dr. Cross' residual functional capacity assessment because Dr. Cross has been treating Plaintiff to ensure that he complies with court-mandated conditions and to rehabilitate him, which apparently disqualifies him from evaluating whether Plaintiff could sustain a full time job. The ALJ concluded that Dr. Cross' ratings are inconsistent with Plaintiff's work history, and his active lifestyle. The ALJ's rejection of Dr. Cross' opinion was in error.

Notably, Dr. Cross is a treatment provider who has continued to treat him over the years. His opinion has remained unchanged. He assessed **mild-to-**

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

**moderate limitations** in the ability to ask simple questions or request assistance, and **moderate limitations** in the ability to understand and remember very short and simple instructions.

He assessed **moderate-to-marked limitations** in the ability to:
- perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;
- sustain an ordinary routine without special supervision,
- make simple work-related decisions;
- accept instructions and respond appropriately to criticism from supervisors;
- get along with co-workers or peers without distracting them or exhibiting behavioral extremes;
- maintain socially appropriate behavior and to adhere to basic standards of neatness or cleanliness;
- be aware of normal hazards and take appropriate precautions.

He assessed **marked limitations** in the ability to:
- remember locations and work-like procedures;
- understand and remember very short and simple instructions;
- maintain attention and concentration for extended periods;
- complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- set realistic goals or make plans independently of others.

He assessed **marked to severe limitations** in the ability to:
- understand and remember detailed instructions;
- carry out detailed instructions;
- work in coordination with or proximity to others without being distracted by them;

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9**

- interact appropriately with the general public;
- respond appropriately to changes in the work setting

According to Dr. Cross, Plaintiff's ability to think in the abstract, that is to predict the outcomes of various choices, is **extremely limited**. This conclusion is supported in the record.

The ALJ is tasked with resolving conflicts in the medical evidence. *Andrews v. Shalala,*, 53 F.3d 1035, 1039 (9th Cir. 1995). Generally speaking, three types of doctors provide medical evidence: treating doctors, examining doctors, and reviewing (non-examining) doctors. "By rule the Social Security Administration favors the opinion of a treating physician over non-treating physicians." 20 C.F.R. § 416.927[2]; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it will be given controlling weight." *Orn*, 495 F.3d at 631. If a treating physician's opinion is not given "controlling weight" because it does not meet these requirements, the ALJ should consider (i) the length of the treatment relationship and the frequency of examination by the treating physician; and (ii) the nature and extent of the treatment relationship between the patient and the treating physician in determining the weight it will be given. *Id.* The ALJ is not required, however, to merely accept the opinion of a treating doctor. *Lester v.*

---

[2] 20 C.F.R. § 416.927(c)(2) states: Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 10

*Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where contradicted, the ALJ may reject the opinion for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.* On the other hand, where the treating doctor's opinion is uncontradicted, the ALJ can only reject it for clear and convincing reasons. *Id.* The opinions of examining physicians are afforded more weight than those of non-examining physicians. *Id.*

Factors the ALJ should consider in evaluating any medical opinion (not limited to the opinion of the treating physician) include: (1) the amount of relevant evidence that supports the opinion and the quality of the explanation provided; (2) the consistency of the medical opinion with the record as a whole; (3) the specialty of the physician providing the opinion; and (4) other factors, such as the degree of understanding a physician has of the Administration's disability programs and their evidentiary requirements and the degree of his or her familiarity with other information in the case record. *Orn*, 495 F.3d at 631.

In this case, the ALJ made a number of errors in issuing her ruling. First, the ALJ erred in imposing a blanket rejection of opinions from providers who were not specifically assessing Plaintiff's ability to work, such as Dr. Cross and Dr. Roesch. In doing so, she failed to consider important information contained in the record regarding Plaintiff's true abilities. Moreover, the ALJ erred in not crediting Dr. Cross's opinions, which were substantially supported by the opinions of Dr. Roesch, Debbie Spitler, and Krystal Boyer. Additionally, Dr. Schultz concluded that Plaintiff's low retrieval, learning slope, and working memory would create problems in a work situation resulting in difficulties remembering and learning new tasks, which supports Dr. Cross's conclusions about Plaintiff's ability to work. (Tr. 533.) Dr. Cross is a treating provider, who spent considerable time with Plaintiff, was consistent in his opinions, and has the specialty and expertise to evaluate Plaintiff. The ALJ erred in giving more weight to the opinions of non-examining experts. The record demonstrates that Plaintiff worked unsuccessfully

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 11

at three part-time jobs, which is substantial evidence that Plaintiff is not able to succeed at full-time work. The ALJ erred in concluding that these jobs demonstrated an ability to successfully engage in full-time, on-going, and regular work.

Additionally, the ALJ's conclusions regarding Plaintiff's activities of daily living are not supported by the record. As such, the ALJ committed reversible error in discounting Plaintiff's credibility based on her characterization of his daily living activities. Plaintiff lives with his parents. He is not independent. He testified that he needs help when he goes grocery shopping. While the record indicates that he took college classes, it appears that these classes were Adult Basic Education classes, not classes the general population usually takes. Also, it appears that the ALJ failed to make the connection that the Sunrise Club is an establishment open only to those in mental health treatment at Central Washington Comprehensive Mental Health. It is a day treatment program for persons with mental disabilities; yet the ALJ appeared to equate Plaintiff's attendance at the Club with employment. Plaintiff did not apply for a job at the Sunrise Club. Rather, he spends time at the club, and while there he volunteers to complete tasks for the benefit of the members. It appears that each task lasts no more than 1 hour at a time. Similarly, the ALJ's reliance on Plaintiff's participation in Toastmasters is misplaced. It is apparent from even reading a stale transcript that Plaintiff has intellectual deficits. His attorney writes that Plaintiff has intellectual defects that are obvious when talking to him and the Court accepts this as true. It is easy to infer that Plaintiff's participation in Toastmasters may meet a social need, but the record does not support a finding that his participation in Toastmasters demonstrates transferable work skills.

It is obvious to the Court after reviewing the complete record that Plaintiff is incapable of successfully engaging in substantial gainful activity on a full-time, regular, and ongoing basis, even if the tasks he is given are simple and repetitive.

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 12

The only question, then, is whether the Court should remand the case for additional proceedings, or remand for award and calculation of benefits.

Recently, the Ninth Circuit set forth three steps the Court needs to take in applying the "credit-as-true" rule. First, the Court must determine whether the "ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Treichler v. Comm.*, 775 F.3d 1090, 1100-01 (9th Cir. 2014). Second, if the ALJ has erred, the Court needs to determine whether "'the record is fully developed,' whether there are 'outstanding issues that must be resolved before a determination of disability can be made' and whether further administrative proceedings would be useful." *Id.* (Citations omitted). Further administrative proceedings are generally useful "where the record 'has not been fully developed,' there is a need to resolve conflicts and ambiguities, or the 'presentation of further evidence . . . may well prove enlightening' in light of the passage of time." *Id.* (Citations omitted). Third, if the Court concludes that no outstanding issues remain and further proceedings would not be useful, the court may apply the Ninth Circuit's prophylactic *Varney* rule to find the relevant testimony credible as a matter of law. *Id.*

The Court finds this case is one of those "rare circumstances" that permits it to exercise its discretion to depart from the ordinary remand rule. As set forth above, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Cross' testimony. The record is fully developed and no outstanding issues remain. If Dr. Cross' testimony is credited and given its proper weight, it is clear that Plaintiff is unable to perform substantial gainful employment. As such, a remand for a calculation and award of benefits is appropriate.

Accordingly**, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is **GRANTED**.
2. Defendant's Motion for Summary Judgment, ECF No. 19, is **DENIED**.
3. The decision of the Commissioner denying benefits is **reversed** and

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 13

**remanded** to the agency for further proceedings consistent with this Order.

    4. The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

    **IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel.

    **DATED** this 13th day of July, 2015.



    _____
    Stanley A. Bastian
    United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTON FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14**